# JOSHUA F. JOHNSON ET AL. *vs.* LELAND J. JOHNSON ET AL.

*Wills—Testamentary   Capacity—Insane   Delusion—Instructions—Evidence.*

There is a lack of mental capacity to make a will when the testator was possessed by an insane delusion and the will was the product of that delusion.   An insane delusion is a belief in things impossible or so improbable under the surrounding circumstances that no man of sound mind would give them credence.

Upon a caveat to a will by two of the testator's children by a second marriage, who were excluded from any share of the estate, the caveators alleged a want of testamentary capacity.   They offered no proof of the testator's general mental unsoundness but there was evidence that he believed that his wife was unfaithful and that these children were not of his paternity.   There was also evidence that there had been absolutely nothing in the conduct of his wife to warrant such a belief on his part. *Held,* that upon this evidence, the question of testamentary capacity was properly submitted to the jury under instructions to the effect, that if they found that the testator was under an insane delusion as to the fidelity of his wife and the paternity of the children, and executed the will under the control of such delusion, then their verdict should be for the caveators.

In the trial of a caveat to a will filed by the testator's widow as next friend of infant children, she is a competent witness under the Act of 1904, ch. 661, not being a party to the cause within the meaning of the statute.

In order to show that a will was the product of an insane delusion by the testator as to the chastity of his wife and the parentage of their children, the fact that he had instituted proceedings for divorce is admissible as evidence of his hostility towards his wife.

When it is shown that a testator disinherited two of his children because he believed that they were not his offspring and that this belief was an insane delusion, then on the trial of an issue relating to testamentary capacity evidence is not admissible that these children were entitled to certain property under the will of their maternal grandfather and that this fact was known to the testator.

*Decided February 14th, 1907.*

Appeal from the Circuit Court for Wicomico County (HOL-

LAND and LLOYD, JJ.)  The eighth exception was taken to the refusal by the Court to admit evidence showing that the maternal grandfather of the infant caveators had devised two farms to their mother for life with remainder to them.

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, and BURKE, JJ.

*Joshua W. Miles* (with whom were *H. L. D. Stanford* and *Toadvin & Bell* on the brief), for the appellants.

*Gordon Tull* and *Robert Moss* (with whom were *Ellegood, Freeny & Wailes* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

This appeal brings up for review certain rulings of the Circuit Court for Wicomico County made during the trial in that Court of issues involving the validity of the last will and testament of Wilmour M. Johnson.  The record presents ten exceptions for our consideration, one to the competency of Mary Johnson the *prochein ami* of the infant caveators, seven to the admissibility of evidence, and two to the ruling of the Court upon the prayers.

It appears from the record that on the 30th day of September, 1905, Leland J. Johnson and Oliver C. Johnson, infant children of Wilmour M. Johnson, by their mother and next friend, filed in the Orphans' Court for Somerset County a caveat to a paper writing which purported to be the last will of their father, who had died in the month of August, 1905, leaving surviving him a widow, Mary Johnson, and six children, four by a former marriage, and the two infant caveators, both of whom are of tender age.  The alleged will was dated the 6th of December, 1904, and was admitted to probate by the Orphans' Court for Somerset County on the 8th day of August, 1905.  By it the whole estate of the testator was devised and bequeathed to the four children by his former marriage.  Upon the application of the caveators, the Orphans' Court sent four issues to the Circuit Court for Som-

erset County to be tried by a jury. The first issue related to the signing and attestation of the will ; the second to the knowledge and understanding by the testator of its contents at or before the time of its execution ; the third to his testamentary capacity at the time of making the will ; and the fourth whether its execution was procured by undue influence exercised over him. The case was first removed to the Circuit Court for Worcester County for trial, and subsequently, upon the suggestion and affidavit of the defendants, was sent to the Circuit Court for Wicomico County in which Court, upon trial had, the jury found for the caveatees on the first, second and fourth issues, and upon the third issue, that of testamentary capacity, they found their verdict for the caveators. From the rulings of the Court, which will be later considered, the caveators have prosecuted this appeal.

At the conclusion of the caveators case, the Court, at the instance of the defendants, directed a verdict in their favor upon the first, second and fourth issues. The defendants at that time also asked the Court to withdraw the third issue from the consideration of the jury, upon the ground the caveators had offered no evidence legally sufficient to show that the testator at the time of the execution of the will was not of sound and disposing mind and capable of executing a valid deed or contract. This prayer was refused by the Court, and this ruling constitutes the appellant's sixth exception. After the rejection of the prayer, the appellants proceeded with their case, and examined a number of witnesses. By so doing they lost the benefit of this exception. *Barabaz* v. *Kabat,* 91 Md. 53. This prayer was again offered at the conclusion of the whole case, and was again refused by the Court, to which ruling the appellants excepted, and this exception, together with that taken to the granting of the caveators first and second prayers, presents the main and important questions in the case, which are, first : Does the record disclose evidence legally sufficient to have taken the case to the jury upon the issue of testamentary capacity? Was there misdirection of law in either of the two prayers granted at

the instance of the caveators? In the consideration of the first question it must be borne in mind that this Court has no power to review the finding of the jury upon matters of fact.

The caveatees introduced a number of witnesses who testified to the capacity of the testator to make a valid will, but the jury disregarded this evidence and we have no power to review their finding upon that question. If upon the whole record there was evidence legally sufficient to have justified the trial Court in submitting the case to the jury upon the issue of mental capacity we have no power to disturb the verdict. In the case of *Hiss* v. *Weik*, 78 Md. 446, where the Court had under consideration a prayer which sought to withdraw the case from the consideration of the jury upon the ground that there was no evidence legally sufficient to show that the will in that case was procured by undue influence, JUDGE McSHERRY, in the course of his opinion used this language, which is strictly applicable to the question we are now considering : "As an appellate Court we cannot review the finding of the jury upon matters of fact, nor can we pass upon the comparative weight of the conflicting evidence submitted to them. If no error of law has been committed by the inferior Court in any of its rulings, the verdict of the jury, whether right or wrong, just or unjust, and even though it be directly against and in the very teeth and face of the preponderance of the evidence, cannot be interfered with here ; and there is no power lodged elsewhere to set aside the verdict, except with the Judge before whom the case was tried below."

We are, therefore, limited to the inquiry as to whether there is to be found in this case evidence legally sufficient to have warranted the Court in submitting to the jury the question of the testamentary capacity of Wilmour M. Johnson at the time of making of the will in controversy. The proof of mental unsoundness of the testator at that time rested upon the caveators, and they were bound to establish to the satisfaction of the jury that the mind of the testator was impaired to that degree, which in legal contemplation, rendered his act

invalid. The standard, or test of testamentary capacity is a matter of law, and is to be determined, or defined by the Court for the guidance of the jury in reaching a decision in a given case; whether the evidence in the case measures up to that standard is, as a general rule, a matter of fact to be decided by the jury. In this case no question is made as to the general mental soundness of Wilmour M. Johnson. On the contrary, it is conceded that he was mentally sound upon all subjects, except the one upon which the validity of his will was assailed, viz: *an insane delusion as to the illegitimacy of his two infant children*, the caveators in this case.

The subject of delusion has been under consideration in a multitude of cases both in this country and in England, and it has been uniformly held that to avoid a will upon that ground the delusion must be an *insane delusion*, and that the will was the *product* of that delusion. If Johnson was the victim of an insane delusion at the time he made his will, there can be no doubt that the will ought to have been stricken down; because it is clear upon all the facts in the case that it was the immediate product of that delusion. It was the duty of the Court to have given the jury a legal definition of an insane delusion, and to have instructed them as to the circumstances under which it would have rendered the will invalid. This we think was properly done by the granting of the defendants' ninth prayer, and the plaintiffs' first and second prayers. By the ninth prayer of the defendants the jury were instructed that if they believe that Wilmour M. Johnson had opinions with respect to his wife and her conduct towards him, which were extravagant and eccentric, or even unfounded, yet if the jury found that at the time he made his will he possessed the degree of capacity described in the defendants' seventh prayer, and that the provisions of his will were made by him in accordance with his own judgment and choice as to the disposition of his property, uncontrolled by any insane delusions, then their verdict should be for the defendants on the third issue; and that the meaning of insane delusion, in its legal sense is, "a belief in things impossible, or a belief in

things possible, but so improbable under the surrounding circumstances, that no man of sound mind could give them credence." By the first prayer of the caveators the jury were told that if Wilmour M. Johnson labored under an insane delusion as defined in defendants' ninth prayer as to the character and fidelity of his wife, Mary Johnson, and the paternity of the said Leland J. Johnson and Olive C. Johnson, and labored under the insane delusion that the said caveators were not his children, but were the children of some one or more other persons, and that he executed the last will and testament offered in evidence under the influence and control of such delusion, and would not have so disposed of his property to the prejudice of the said Leland J. Johnson and Olive C. Johnson if his mind had been free from such delusions, then they must find for the plaintiffs on the third issue, and to prove whether such delusions were insane and of a permanent character, it is competent for the jury to take into consideration evidence of hostility, if any there was, to his wife and the said children; and by the caveators second prayer they were instructed that if Wilmour M. Johnson labored under an insane delusion as defined in defendants' ninth prayer which affected his mind in the disposition of his property by the will in evidence, and that but for the influence of said delusion, the said will would not have been made by him, then they should find for the plaintiffs upon the third issue as to his testamentary capacity at the time of executing the will, although the jury should believe that the said Johnson conducted his ordinary business with shrewdness and apparent discretion, and did not make any exhibition of insanity to many persons who were brought in contact with him.

These prayers announced the correct principles of law upon the only issue left for the decision of the jury. Assuming for the moment that Mrs. Johnson was a competent witness, was there evidence legally sufficient from which the jury might have found that the testator lacked testamentary capacity within the meaning of those prayers? The testimony on the part of the plaintiffs showed the marriage of Mary Johnson to

the testator in 1898, and that they lived together about two years; that during that time two children, the infant plaintiffs in this case, were born to them; that for sometime after his marriage, and after the birth of the first child they lived happily together; that he was proud and fond of his wife and child; that Mrs. Johnson was a faithful and chaste wife; but that sometime after her pregnacy with the second child her husband's manner and conduct towards her changed; he became abusive to her; charged her with unchastity; denied the paternity of the children; treated her with such harshness that she was obliged to leave him; that he instituted divorce proceedings against her; refused to be convinced of his wife's chastity and the legitimacy of the children; displayed towards them feelings of great hostility and aversion, and finally excluded them from all participation in his estate, solely because of his belief in his wife's unchastity and his children's illegitimacy.

If the plaintiff's evidence be true, there was absolutely nothing in the conduct of his wife to justify or warrant such a belief on his part. Such a state of facts was sufficient to have taken the case to the jury, under the prayers to which we have referred, upon the question of insane delusion. In *Bell* v. *Lee*, 28 Grant, Ch. R. U. C. 50, where the question of insane delusion as to the illegitimacy of a child was under consideration, the Court approved the doctrine stated by SIR JAMES HANNEN in *Braughton* v. *Knight*, 3 Pro. and Div. "It is unfortunately not a thing unknown to parents, and in justice to women I am bound to say that it is more frequently the case with fathers than mothers, that they take unduly harsh views of the character of their children, some especially. That is not unknown. But there is a limit, beyond which one feels that it ceases to be a question of harsh, unreasonable judgment and character, and that the repulsion which a parent exhibits towards one or more of his children must proceed from some mental defect in himself. It is so contrary to the whole current of human nature that a man should not only form a harsh judgment of his children, but that he should put that into

practice so as to do them injury, or deprive them of advantages which most men desire above all things to confer upon their children. I say there is a point at which such repulsion and aversion are in themselves evidence of unsoundness in mind."

The Court in *Bell* v. *Lee, supra,* held that a fixed and unalterable conviction on the part of the testator that his child was illegitimate was evidence of an insane delusion, when it appeared that there was not a scintilla of evidence to support such a belief.

In *Middleditch* v. *Williams*, 45 N. J. Eq. 734, in which case the doctrine of *Bell* v. *Lee, supra,* was approved the Court said, "If one, without evidence of any kind, imagines or conceives something to exist which does not in fact exist, and which no reasonable person would in the absence of evidence believe to exist, then it is manifest that the only way in which his irrational belief can be accounted for, is that it is the product of mental disorder. Delusions of this kind can be accounted for upon no reasonable theory, except that they are creations of some derangement of the mind in which they originated." In the case of the *Seamens' Friendly Society* v. *Hopper*, 33 N. Y. 624, DENIO, C. J., in the course of his opinion, said: "If a person persistently believes supposed facts which have no real existence except in his perverted imagination, and against all evidence and probability and conducts himself however logically, upon the assumption of their existence, he is, so far as they are concerned, under a morbid delusion; and delusion in that sense is insanity, such a person is essentially mad, or insane on those subjects, although on other subjects he may reason, act and speak like a sensible man."

In *Brown* v. *Ward*, 53 Md. 387, this Court said: "Hostility and aversion to those who are bound to one by the ties of kindred and blood, are admitted as proof upon the question of insanity, not alone because there exists such hostility, but because it is altogether without cause or based upon some delusion. The aversion of one person to another, is by itself no proof of insanity; but coupled with the fact, that it is without cause, or is founded upon some delusion, it may be."

Upon the authority of these cases, and there are many others to the same effect we are of opinion that, assuming the evidence offered by the plaintiff to be true, which the Court must be bound to do in passing upon the defendant's fifth prayer, which sought to take the case from the jury, the question of the testator's capacity to execute the will was properly left to the jury.

We will now consider the exceptions taken to rulings upon questions of evidence, and what we have said upon the main issue in the case will dispense with any extended discussion of many of these exceptions.    The first and ninth exceptions are to the competency of Mrs. Johnson as a witness, upon the ground that she is a party to the cause, and, therefore, is an incompetent witness under the *Act of 1904, ch. 661.*    Mr. Poe in his work on Practice, fourth edition, in commenting upon this Act says: "Inasmuch as the object of the statute (ch. 661, Acts 1904), is to remove the pre-existing disqualifications from interest in the subject and object of the suit, and to enlarge and extend, and not to restrict the competency of persons to testify, it is not to be interpreted in such a way as to make incompetent persons who prior to its passage, were competent or could have been made such."    Mrs. Johnson is not a party to the case within the meaning of the Evidence Act.    This is definitely settled in the case of *Trahern* v. *Colburn, Ex.*, 63 Md. 103.

The second, third and fifth exceptions relate to the evidence of witnesses who were called to prove the facts to which we have referred as constituting evidence of insane delusion. There was, therefore, no error in the ruling upon those exceptions. The Court was right in its ruling upon the fourth exception.    It was proper to show the institution of proceedings for divorce as evidence of the testator's hostility to his wife, and there is nothing in the record to show that the provisions of the Act of 1890, ch. 318 (Code, 1904, Art. 35, sec. 66), were not fully complied with.    *Miller* v. *Matthews and Kirkland,* 87 Md. 474.    There was no injury done the appellants by the ruling upon the 7th exception, as the testimony sought to be

introduced had been substantially put before the jury in the previous testimony evidence of the witness Brown. If it be assumed that the testimony proposed to be offered under the eighth exception would be admissible in the usual cases of contest involving testamentary capacity, in this case, where there is no pretense that the testator was in the slightest degree influenced by the fact sought to be proven, but where it is perfectly clear that the will was the product of his belief in his wife's infidelity and in the illegitimacy of her infant children, the production of such testimony would be not only irrelevant, but would be calculated to mislead the jury. Finding no error of law in any of the rulings appealed from they will be affirmed.

*Rulings affirmed and cause remanded.*