(117 So. 10)

### BATSON et al. v. BATSON et al. (7 Div. 770.)

Supreme Court of Alabama. May 10, 1928.

**1. Wills ⬲282—Allegation that testator was of unsound mind at time of executing will sufficiently presented issue of decedent's mental capacity.**

Allegation that testator was of unsound mind at time of execution of will sufficiently presented issue of fact of decedent's mental capacity.

**2. Wills ⬲282—Allegations of insane delusion of testator held sufficient on demurrer.**

In will contest case, paragraph of bill alleging that testator was suffering from mental delusion to effect that complainant had defrauded him of funds during winding up of business, which complainants alleged was without foundation, but merely an insane delusion on part of testator, and that insane delusion so operated on mind of testator that he was incapable of making will, *held* sufficient on demurrer.

**3. Wills ⬲38(1)—Testator's belief in state of supposed facts that do not exist and which no rational person would believe, in absence, to exist, is "insane delusion."**

Belief by testator in state of supposed facts that do not exist and which no rational person

'would believe, in absence of evidence, to exist, is an "insane delusion."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insane Delusion.]

**4. Wills ⊕⟶324(2)—Whether testator's belief that son had defrauded him was result of deranged condition of mind amounting to insane delusion vitiating will held for jury.**

In suit to contest a will, question whether testator's belief that son had defrauded him of certain funds during winding up of business was result of deranged condition of his mind that amounted to an insane delusion vitiating his will *held* for jury.

**5. Wills ⊕⟶38(2)—Where insane delusion regarding one who is object of testator's bounty causes him to make will he would not make but for delusion, will cannot be sustained.**

Where there is an insane delusion in regard to one who is object of testator's bounty which causes him to make will which he would not have made but for that delusion, such will cannot be sustained.

**6. Wills ⊕⟶324(2)—Whether testator stated he never received cent on dissolution of grocery company, and, if he did, whether he was suffering from insane delusion regarding matter and son's participation therein, held for jury.**

Whether testator made statement that he did not receive a cent on dissolution of grocery company when in fact he received approximately $40,000, and, if he did make statement, whether, at time, he was suffering from an insane delusion as to such business matter and his son's participation therein, *held* for jury.

**7. Wills ⊕⟶50—Testator has required mental capacity if he recollects property he is about to bequeath and persons to whom he wishes to will it and manner of disposition and understands business he is engaged in.**

If testator has memory and mind enough to recollect property he is about to bequeath and persons to whom he wishes to will it and manner in which he wishes it to be disposed of, and to know and understand business he is engaged in, he has, in contemplation of law, sufficient mental capacity to make will.

**8. Wills ⊕⟶55(1)—Evidence warranted jury's conclusion that will was invalid on ground of mental incapacity.**

In suit to contest will, evidence *held* sufficient to support jury's conclusion announced by its verdict finding the issues in favor of plaintiffs and against validity of will on ground that testator did not have sufficient mental capacity at time of execution of will.

**9. Wills ⊕⟶53(1), 54(1)—Testimony regarding personal history of testator, his conversations, deportment, and appearance, held competent, in will contest case, on issue of mental incapacity.**

In suit contesting will on ground of mental incapacity of testator testimony relating to personal history of testator, his conversations, deportment, acts, and appearance, *held* admissible; weight of evidence being for jury.

**10. Evidence ⊕⟶501(3)—Nonexpert witness' opinion that testator was mentally incapable of transacting ordinary business is inadmissible when facts forming basis of opinion are not stated.**

Nonexpert witness' opinion that testator was mentally incapable of transacting ordinary business is inadmissible when facts on which opinion is based are not stated.

**11. Appeal and error ⊕⟶971(2)—Evidence ⊕⟶ 498½—Whether nonexpert is qualified to deliver nonexpert opinion on unsoundness of testator's mind is addressed to court's discretion, and exercise thereof will not be reversed, unless plainly erroneous.**

Whether nonexpert is qualified to deliver nonexpert opinion, favorable or unfavorable, on issue of soundness or unsoundness of testator's mind, is question submitted to sound discretion of trial court, and exercise thereof will not be reversed, unless plainly erroneous.

**12. Wills ⊕⟶53(8)—Evidence of testator's past and more recent business methods held admissible on issue of mental capacity.**

In will contest case, evidence of testator's past and more recent business methods *held* admissible on issue of testator's mental capacity.

**13. Wills ⊕⟶53(1)—Evidence that testator looked like he was troubled, bothered, and excited, held admissible on issue of mental capacity.**

In will contest case in which contestants claimed testator did not have sufficient mental capacity to make will, evidence that testator looked like he was troubled, bothered, excited, and did not look exactly right, *held* admissible, since witness who observes person's facial expression is generally allowed to say that it indicated any of ordinary and familiar mental emotions or physical sensations which common knowledge teaches us that may be visibly indicated by shorthand rendition of fact.

**14. Evidence ⊕⟶506—Permitting doctor to testify regarding testator's mental condition that he was impressed it was abnormal held not error.**

In will contest case, permitting doctor to testify in reference to testator's mental condition that he was impressed that it was abnormal *held* not error.

**15. Wills ⊕⟶54(1)—Evidence regarding letter from testator to son to effect that testator's health was bad held competent as to physical condition afterwards affecting mental condition.**

In will contest case, evidence by son that he had letter from testator to effect that his health was very bad at times *held* competent, with other evidence, as to his physical condition which afterwards affected his mental condition.

**16. Wills ⊕⟶53(4)—Evidence of mental disorders of other members of testator's family held admissible on issue of mental capacity.**

In will contest case, evidence regarding mental disorders of other members of testator's family *held* admissible on issue of mental ca-

pacity, since on questions of insanity, proof of hereditary insanity is competent, and it may be shown that other members of testator's family were afflicted with mental disease like that of testator and of nature to be inherited.

**17. Evidence ⊚⟶553(2) — Hypothetical question need not hypothesize every fact in evidence, but must sufficiently cover evidence to justify expert opinion.**

Hypothetical question propounded to expert witness need not hypothesize every fact in evidence, but must sufficiently cover evidence to justify expert opinion—fairly apprise and justify expert on material issue of fact before court and of which he is called on to give an opinion.

**18. Evidence ⊚⟶506—Permitting doctor as expert to express opinion that testator "was of unsound mind" at time indicated held not error.**

In will contest case, court did not err in permitting doctor who qualified as an expert to express an opinion as to mental condition of testator at time indicated that he "was of unsound mind."

**19. Wills ⊚⟶54(1)—Exhibits containing statements by testator regarding son and others held admissible in will contest case.**

In will contest case in which contestants claimed testator did not have sufficient mental capacity to make will, but had an insane delusion that son had defrauded him, exhibits identified as being in testator's handwriting and found in his room containing statements about testator's son and others *held* admissible.

**20. Evidence ⊚⟶363—In will contest, introducing chapters from book on insanity which doctor testified was recognized authority held not error.**

In will contest case, permitting introduction of chapters from book on insanity which doctor testified was a bit old, but was recognized as a very good book on mental diseases or insanity, *held* not error.

**21. Wills ⊚⟶53(9)—On issue of testamentary incapacity, evidence that testator took dislike to niece without cause, and also took dislike to son who sent niece to college, held competent to show testator had no real reason to not leave full portion to son.**

In will contest case in which contestants claimed testator did not have testamentary capacity, evidence that testator had treated niece as member of family and had expressed intention to send her to college, but later, without cause, took dislike to her, and also took dislike to son who sent her to college, *held* competent to show testator had no real reason to not leave full portion of estate to son.

**22. Wills ⊚⟶324(2)—Weight of evidence on testator's mental delusions held for jury.**

In will contest case, weight of evidence on question of testator's mental delusions was for jury.

**23. Wills ⊚⟶329(3)—Charge that burden of proof regarding testamentary incapacity was on contestant and was not shifted, except by proof of habitual insanity prior to will, held properly refused.**

Charge that burden of proof as to testamentary incapacity was on contestant and was not shifted, except by proof of habitual insanity on part of testator prior to making of will, *held* properly refused, as confusing to right of jury to consider issue of insane delusion.

**24. Trial ⊚⟶260(1)—Refusal of charges covered by charges given held not error.**

Refusal of charges covered by charges given *held* not error.

Appeal from Circuit Court, Talladega County; R. B. Carr, Judge.

Bill in equity by E. O. Batson and D. C. Batson against James W. Batson, individually and as executor of the will of J. P. Batson, deceased, and others, to contest said will. From a decree for complainants, defendants appeal. Affirmed.

Refused charge 1 is as follows.

"(1) I charge you that the burden of proof as to testamentary incapacity is on the contestant, and is not shifted, except by proof of habitual or fixed insanity on the part of J. P. Batson prior to the making of the will."

The following slips of paper were introduced by complainants:

Exhibit C:

> "E. O. Batson
> he gain the confidents
> of his Daddy he
> stole it he stole
> money & other property
> then stole the books."

Exhibit D:

"Betrade confidence E. O. Batson gain the confidence of his Daddy he then stole it, then stole his goods then stole the books, What will he do next?"

Exhibit E:

"Frank Ellis, R. E. Bowden, T. B. Parker, E. O. Batson & & Co. has rob me near twenty-two thousand dollars."

Exhibit F:

"Frank Ellis, R. E. Bowden, T. B. Parker, E. O. Batson & Co. has rob me nearly twenty-two thousand dollars."

Exhibit G:

"I have strive in early life to make my last days a pleasure to live. But it seems now that life is a buddon I have trusted men who I believe who would treat me right. But they have betraed confidents W. F. Wheelock, R. E. Bowden, T. B. Parker & E. O. Batson has nearly ruin me."

---

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Exhibit H:

"E. O. Batson Due $765.20."

The witness Dr. Ward was shown a book entitled "A Practical Manual of Insanity for the Medical Student and General Practitioner" by Daniel R. Brower and Henry M. Bannister, and testified that it was a bit old, but was recognized as a very good book on mental diseases and insanity. Over defendants' objection chapters from this book were introduced in evidence.

Knox, Dixon, Sims & Bingham, of Talladega, for appellants.

The grounds of contest are insufficient. 40 Cyc. 1268. The evidence does not bear out the charge of an insane delusion, and the motion for new trial should have been granted. 40 Cyc. 1013; Phillips v. Flagler, 82 Misc. Rep. 500, 143 N. Y. S. 798; L. R. A. 1915A, 460; Dibble v. Currier, 142 Ga. 855, 83 S. E. 949, Ann. Cas. 1916C, 1; MacCrellish's Estate, 167 Cal. 711, 141 P. 257, L. R. A. 1915A, 443; Slaughter v. Heath, 127 Ga. 747, 57 S. E. 69, 27 L. R. A. (N. S.) 1; Potter v. Jones, 20 Or. 239, 25 P. 769, 12 L. R. A. 161; Martus v. Haslick, 195 Mich. 432, 161 N. W. 965, Ann. Cas. 1918D, 466; Hall v. Hall, 38 Ala. 131; Watkins v. Yeatman, 189 Ala. 370, 66 So. 707; Hollingsworth v. Miller, 212 Ala. 187, 101 So. 881. Charge 1, refused to defendants, was a good charge. Cummings v. McDonnell, 189 Ala. 98, 66 So. 717. Testimony of witness Matthews as to the age and manner of dress of testator should not have been admitted. Wear v. Wear, 200 Ala. 345, 76 So. 117. Testimony as to the mental condition of members of the testator's family was erroneously admitted. 40 Cyc. 1031; Fraser v. Jennison, 42 Mich. 227, 3 N. W. 882.

Harrison & Stringer, of Talladega, and Hugh A. Locke, of Birmingham, for appellees.

The ground of contest set out in subdivision E of paragraph 4 of the bill was sufficient. Florey v. Florey, 24 Ala. 241; L. R. A. 1915A, 459. The ground of contest that the testator was of unsound mind at the time of the execution of the will is sufficient. Wear v. Wear, 200 Ala. 345, 76 So. 111. The evidence in this case was sufficient from which the jury could find that testator suffered from an insane delusion. Johnson v. Johnson, 105 Md. 81, 65 A. 918, 121 Am. St. Rep. 570; Newman v. Smith, 77 Fla. 633, 667, 688, 82 So. 249; Snell v. Weldon, 243 Ill. 496, 90 N. E. 1070; Ballantine v. Proudfoot, 62 Wis. 216, 22 N. W. 392; Ann. Cas. 1916C, 10; Cotton v. Ulmer, 45 Ala. 378, 6 Am. Rep. 703; L. R. A. 1915A, p. 458; Thomas v. Carter, 170 Pa. 272, 33 A. 81, 50 Am. St. Rep. 770. Charge 1 was properly refused, since it would have taken from the jury the issue of insane delusion. Authorities, supra. The deportment, acts, and appearance of the testator may be proven. 14 Ency. Evid. 281, 283. The trial court's deci-

sion as to whether a nonexpert witness is properly qualified to give an opinion regarding testator's soundness of mind will not be reversed unless plainly erroneous. Wear v. Wear, 200 Ala. 345, 76 So. 111; Hollingsworth v. Miller, 212 Ala. 187, 101 So. 881; Chandler v. Chandler, 204 Ala. 164, 85 So. 558. It is permissible for a witness to testify that a person looked troubled or bothered. 22 C. J. 557; A. G. S. v. Frazier, 93 Ala. 49, 9 So. 303, 30 Am. St. Rep. 28; Schlencker v. State, 9 Neb. 241, 1 N. W. 857. A slight discrepancy between the facts assumed in a hypothetical question and those the evidence tends to establish will not be regarded as prejudicial error. 5 Ency. Evid. 624.

THOMAS, J. The contest in chancery is of the probate of a will. The facts were submitted to a jury duly demanded. Code, §§ 10617, 10640; Wachter v. Davis, 215 Ala. 659, 111 So. 917; Ala. T. & N. Ry. Co. v. Aliceville Lumber Co., 199 Ala. 391, 402, 74 So. 441.

[1] The grounds of contest were sufficient, and duly presented the issue of fact of decedent's mental capacity—that testator was of unsound mind at the time of the execution of the will. Wear v. Wear, 200 Ala. 345, 76 So. 111; Barksdale v. Davis, 114 Ala. 623, 627, 22 So. 17. The issue of undue influence was eliminated by instruction of the court.

[2] There was no error in overruling demurrer to subdivision E of paragraph 4 of the bill. It is as follows:

"The said J. P. Batson, deceased, was suffering from a mental delusion to the effect that complainant E. O. Batson had defrauded him of certain funds during the winding up of the business of Batson Grocery Company, which complainants allege and offer to prove was without foundation, in fact, merely an insane delusion on the part of the said J. P. Batson, deceased, and that the said insane delusion so operated upon the mind of the said J. P. Batson, deceased, that he was incapable of making the said will at the time the same was executed."

It set forth the insane "delusion" and its facts, avers that it had no foundation in fact, yet that this delusion so affected testator as to render him incapable of making a will under the law. Florey's Ex'rs v. Florey, 24 Ala. 241; L. R. A. 1915A, 459, note; 27 L. R. A. (N. S.) 68.

[3] If one, against "all evidence and probability, persistently believes supposed facts which have no existence except in his perverted imagination, and conducts himself, however logically, upon the assumption of their existence, he is, so far as they are concerned, under an insane delusion," is the definition contained in Re Riordan's Estate, 13 Cal. App. 313, 109 P. 629; L. R. A. 1915A, 459; In re Alexander, 246 Pa. 58, 91 A. 1042, Ann. Cas. 1916C, 33. That is to say, the belief in a state of supposed facts that do not exist, and which no rational person would believe, in the absence of evidence, to exist, is

an insane delusion. See Lanham v. Lanham, 62 Tex. Civ. App. 431, 146 S. W. 635; 40 Cyc. 1031–1, and authorities.

In Johnson v. Johnson, 105 Md. 81, 65 A. 918, 121 Am. St. Rep. 570, 573, it is declared that, to avoid a will because the testator entertained a delusion, that delusion must be an insane delusion, and the will must be the product thereof. The definition of such delusion employed in the Johnson Case was:

"A belief in things impossible, or, though possible, so improbable under the surrounding circumstances that no man of sound mind could give them credence."

[4] The evidence of Matthews, Thompson, and McKinnon was sufficient to present an issue of fact on general insanity. The witnesses' detailed facts,—their long acquaintance with Mr. Batson, his unprovoked fits of anger and loss of self-control, action on the street as to his son, demanding money of him, his conduct as to the old or worn automobiles, and suggestion that they should be sold at the original cost, his changed and unnatural habits of business and insufficient dress, his neglected personal appearance, his many and unnatural memoranda found among his effects as to his son, Batson, Bowden, and Wheelock, the testimony tending to connect him with the damage to the son's automobile, the traces of insanity in his immediate ancestors—when considered with the other evidence were sufficient to submit the question of general insanity. The evidence of Robinson, Dr. Ward, and West was to the same end and effect.

The evidence of Levie and Robinson was to the effect of testator's unrestrained declarations as to his son and that he did not receive anything from the old business; his mental status or his intention with which he acted as to the provision in his will for the nominal sum given one of his sons.

The evidence of E. O. and H. N. Batson was that instead of such statement (to Levie and Robinson being true) the father had received a large sum from said business.

The evidence of McKinnon was to the effect that said corporate business was duly closed at the instance of testator and with his approval. If testator believed he had not received a cent therefrom, when he did receive about $40,000, this was some evidence for the jury of an insane delusion as to such matter and his son's participation therein. There is no evidence in the record that E. O. Batson stole his father's money as the latter repeatedly stated to said witnesses. Mr. Batson must have believed his son guilty, and yet the facts wholly fail to support him in this unwarranted and unnatural belief. It was for the jury to say whether this belief was the result of a deranged condition of his mind that amounted to an insane delusion vitiating his will.

The evidence bearing upon the several elements of an insane delusion is voluminous, and it is impractical to discuss it in detail without unduly extending this opinion.

[5] In the case of Newman v. Smith, 77 Fla. 667, 678, 82 So. 236, 249, the testator stated he had made a will and left everything to his wife. On being asked why he did not give something to his daughter by his former wife, he replied that "when we parted she went with her mother, and I gave her everything I had." The observation is made that, if this conversation occurred, Smith was laboring under a delusion, because the testimony disclosed that, when the latter and his first wife parted, he did not give the daughter anything, nor did she go with her mother, but was taken by an aunt when about one year old, with whom she lived until she married. Under such contrary statement of fact the court said that testator was either laboring under an insane delusion that might naturally have influenced him in making his will, or that he told a deliberate falsehood, or the alleged conversation never occurred. The court said that, if the first conclusion be accepted, testator was laboring under an insane delusion. It is a well-established rule, "abundantly sustained by the rulings of other courts of the highest respectability, that where there is an insane delusion in regard to one who is an object of the testator's bounty, which causes him to make a will which he would not have made but for that delusion, such will cannot be sustained." American Bible Soc. v. Price, 115 Ill. 623, 5 N. E. 126.

[6] In the instant case the same rule applies. It was proven that J. P. Batson received from the Batson Grocery Company upon the dissolution approximately $40,000, and Batson's statement to the witness Levie that he never received a cent, and his other statements that he received practically nothing from that company's business, are either false, or testator made no such statements, or else when stated testator was laboring under an insane delusion as to such fact and his son's participation in that dissolution or conduct of closing of the business at testator's instance. There is no reason to believe that he would have told a falsehood about the matter, no evidence tending to show interest or falsehood by the witness, and no evidence from which an inference could be drawn that testator knowingly made such false statements, and false statements were contrary to his former business and social conduct. It follows that it was a proper question for the jury to determine (1) as to whether he made these statements, and (2) if he did so, declare whether at the time he was suffering from an insane delusion as to such business matter and his son's participation therein.

In the case of Snell v. Weldon, 243 Ill. 496, 520, 90 N. E. 1061, 1070, the cases on insane

delusion are collected, and the conclusion is stated as follows:

"Where a testator has some actual grounds for the belief which he has, though regarded by others as wholly insufficient, the mere misapprehension of the facts or unreasonable and extravagant conclusions drawn therefrom do not establish the existence of such a delusion as will invalidate his will. Stackhouse v. Horton, 15 N. J. Eq. 202; Martin v. Thayer, 37 W. Va. 38, 16 S. E. 489; Wait v. Westfall, 161 Ind. 648, 68 N. E. 271; Owen v. Crumbaugh, 228 Ill. 380, 81 N. E. 1044, 119 Am. St. Rep. 442 [10 Ann. Cas. 606].

"The establishment of an insane delusion involves proof that the testator in this case believed certain things concerning his son which did not exist; that he had no evidence on which to base such belief; that the things which he believed were false and were adhered to by the testator after their falsity had been shown by reasonable evidence; that the things which the testator believed were such things as no person of sound mind would believe; that the testator refused to yield or give up such irrational belief in the face of such reasonable evidence as would convince an ordinarily sound and healthy mind; and, lastly, that the existence of such delusion was present in the mind of the testator and exercised a controlling influence over him at the time the will was executed."

In the Snell Case is the statement by the court that testator became careless and indifferent about his dress. Here there is testimony of the same kind. In Snell's Case the court observed:

"He would walk the streets with his shoes unlaced, sometimes without a coat, and with the balance of his clothing improperly adjusted."

In this case there is evidence that J. P. Batson wore a straw hat and canvass shoes in the winter, although he had previously been neat in his dress and was possessed of ample means to properly clothe himself. In Snell's Case is the statement of fact that testator assaulted his son; in the instant case Mr. Batson undertook to assault his son on the streets and in his office and at other times cursed and abused him with the evident intention of trying to assault him when he had opportunity to make good his threats. In the Snell Case it is observed that testator "was seized and dominated by an unreasoning and unnatural hatred toward his son"; in the instant case that J. P. Batson refused to reason with his son and, take counsel of friends, but when the son's name was mentioned lost control of himself, shook and trembled, was unnerved and could not discuss the matter with reason. In Snell's Case the court said:

"At all times and under all circumstances, in public and private places and in the presence of all classes of people, whenever the testator had occasion to refer to appellee, he heaped upon him the vilest epithets known to the English language."

The testimony of the witness E. N. West and other witnesses shows that testator was guilty of the same conduct, as to the son, without cause. In the Snell Case is the observation that testator "threatened to kill appellee, and said he had robbed him." There is evidence to like effect in the instant case, that testator, J. P. Batson, accused his son of robbing him, carried a gun in a small bag on one occasion, and threatened to kill his son. The cases are similar and presented an issue of fact on the question of insane delusion that invalidated his testamentary disposition of his properties.

In this jurisdiction, Florey's Ex'rs v. Florey, 24 Ala. 241, 249, the holding was that, where the testator was suffering from an insane delusion to the effect that his son was illegitimate, this invalidated the will. Mr. Chief Justice Goldthwaite said:

"* * * We think the belief of the testator, in opposition to this evidence, was admissible, for the purpose of showing delusion upon this particular subject. The belief, it is true, might have been the result of ignorance, rather than delusion; but so may a belief in witchcraft, and most other irrational or absurd opinions. Common observation and daily experience have fully demonstrated, that an irrational belief more frequently results from eccentricity, ignorance or association, than from insanity. Still, however, as irrationality is one of the results of derangement—one of the indicia by which it manifests itself—it follows that either acts or opinions, which are in themselves irrational, are proper to be submitted to the jury, and are entitled to more or less weight according to circumstances. There are opinions so contrary to reason, that none but a person of unsound mind could entertain them; and, on the other hand, there are those which, although irrational, may be attributed to the causes we have before assigned, rather than to derangement; and in cases where the disease is not clearly and plainly marked, insanity, either partial or total, should not be predicated upon acts or opinions which may properly be referred to any other cause. If, however, partial insanity, or monomania, is established, and the will is the result of such insanity, the act is vitiated."

Again, in Cotton v. Ulmer, 45 Ala. 397, 398, 6 Am. Rep. 703, Mr. Chief Justice Peck declared:

"'Proof of the existence of partial insanity will invalidate contracts generally, and will be sufficient to defeat a will, the direct offspring of partial insanity, both in the courts of common law, and in the ecclesiastical courts, although the testator, at the time of making it was sane in other respects, upon ordinary subjects.' The reason of this rule is, because a will thus made, is an insane act—that is, the act of an insane man, and the law will not sanction nor uphold such an act. We understand this to be the principle decided in the case of Florey's Ex'rs v. Florey, 24 Ala. 241. There the testator, under the insane delusion that a certain person was his son, made him the principal beneficiary of his will. The court held the will invalid, for that reason. * * *

"On the hypothesis of the charge, in this case, the testator made his will under the influence of an insane delusion, and we are unable to find any good reason why the will should be held invalid in the one case, and valid in the other. In each case, the testator acted under an insane delusion, therefore, in each case, the will should be held to be invalid. In the one case, as in the other, when it was ascertained the will was the offspring and fruit of an insane delusion, it should be declared void, without inquiring what the testator would or would not have done, if he had been of sound mind and memory."

In the Cotton Case testator's daughter married a minister; that wife died prior to testator, who disinherited the children of this deceased daughter; the evidence showed the unreasonable aversion of testator to said son-in-law. When his name was mentioned, testator cursed and abused him without justification or cause in fact. The holding that an issue of fact was properly made and submitted to the jury as to whether testator's feeling toward the father of these children was the result of an insane delusion, such as vitiating the will disinheriting the grandchild.

In Stubbs v. Houston, 33 Ala. 555, 567, Mr. Chief Justice Walker said:

"A total deprivation of reason is not requisite to destroy testamentary capacity. Dementia, and idiocy, are not the only forms of incapacity. A competent testator must not only have mind and memory, but mind and memory enough to understand the business in which he is engaged."

[7] And he quotes the generally accepted definition from his opinion in Taylor v. Kelly, 31 Ala. 59, 72 (68 Am. Dec. 150), as follows:

If the testatrix "had memory and mind enough to recollect the property she was about to bequeath, and the persons to whom she wished to will it, and the manner in which she wished it to be disposed of, and to know and understand the business she was engaged in, she had, in contemplation of law, a sound mind; and her great age, bodily infirmity, and impaired mind, would not vitiate a will made by one possessing such capacity." 1 Jar. on Wills, 50, 51, 52, 53, and notes; 1 Wms. on Ex. 35, and notes; Stevens v. Vancleve, Fed. Cas. No. 13412, 4 Wash. C. C. R. 262; Rawdon v. Rawdon, 28 Ala. 565; Coleman v. Robertson, 17 Ala. 84; McElroy v. McElroy, 5 Ala. 81.

This wise and just definition of mental capacity required of a testator has been followed in this court. Lewis v. Martin, 210 Ala. 401, 414, 98 So. 635; Howell v. Howell, 210 Ala. 429, 98 So. 630; Watkins v. Yeatman, 189 Ala. 370, 66 So. 707; West v. Arrington, 200 Ala. 420, 423, 76 So. 352; Little v. Little, 209 Ala. 651, 96 So. 928; Dersis v. Dersis, 210 Ala. 308, 98 So. 27.

[8] After a careful examination of the evidence we are of opinion that an issue of fact was presented on the issue of general insanity or that of such an insane delusion that vitiated the will so contested, and that the jury was warranted in reaching the conclusion announced by its verdict, finding "the issues in this case in favor of the plaintiffs, and against the validity of the will."

[9] Several objections interposed and exceptions reserved in the testimony of Mr. Haynie were without merit. The testimony related to the personal history of testator— his conversations, deportment, acts, and appearance, etc. This was competent with the other evidence before the jury. The nature of the issue and the necessity for admitting details and circumstantial evidence results "in opening a wide field of inquiry." The weight of such evidence was for the jury. Johnson v. Armstrong, 97 Ala. 731, 12 So. 72; 14 Encyc. of Ev. pp. 281, 283.

[10, 11] A nonexpert witness' opinion that testator was mentally incapable of transacting ordinary business is inadmissible when the facts, upon which that opinion is based, are not stated (Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am. St. Rep. 33); and whether the nonexpert was qualified to deliver a nonexpert opinion, favorable or unfavorable, upon the issue of soundness or unsoundness of decedent's mind, is a question submitted to the sound discretion of the trial court, and the exercise thereof will not be reversed, unless plainly erroneous (Wear v. Wear, 200 Ala. 345, 348, 76 So. 111 [10–12]). It is sufficient to say that the proper predicate was laid for the opinion given by the witnesses Matthews, McKinnon, and Thompson—that testator was of unsound mind for a year or two prior to his death. Chandler v. Chandler, 204 Ala. 164, 85 So. 558; Hollingsworth v. Miller, 212 Ala. 187, 101 So. 881.

[12-14] The nature of the inquiry of fact made relevant testator's past and more recent business methods as detailed by McKinnon (Stubbs v. Houston, 33 Ala. 555, 568; 14 Encyc. of Ev. p. 298); and there was no error in allowing that witness, and others, to testify that testator looked like he was troubled, bothered, excited, and did not look exactly right. A witness who observed a person's facial expression is generally allowed to say that it indicated any of the ordinary and familiar mental emotions or physical sensations which common knowledge teaches us may be visibly indicated by a shorthand rendition of fact. James v. State, 193 Ala. 55, 69 So. 569, Ann. Cas. 1918B, 119. This was a mere shorthand rendition of fact, necessary because of the difficulty of reproduction of human conduct or expression of human emotions to enable the jury to draw the inference. Carney v. State, 79 Ala. 14, 18; Fincher v. State, 211 Ala. 388, 391, 100 So. 657; Woodward Iron Co. v. Spencer, 194 Ala. 285, 69 So. 902; James v. State, 193 Ala. 55, 69 So. 569, Ann. Cas. 1918B, 119; 22 C. J. 557, § 656, where Alabama cases are collected. There was no error in allowing Dr. Jones to testify in reference to testator's mental con-

dition that he was impressed that it was abnormal.

[15, 16] The evidence by Dr. Batson that he had a letter from his father to the effect that his "health (is) was very bad at times," was competent with the other evidence as to his physical condition which afterwards affected his mental condition. The mental disorders of other members of testator's family were detailed by Dr. Batson and were made relevant by the testimony tending to show the mental condition of the testator. It is the accepted rule that on questions of insanity, proof of hereditary insanity is competent; and it may be shown that other members of testator's family were afflicted with a mental disease like that of testator and of a nature to be inherited. James v. State, 193 Ala. 55, 69 So. 569, Ann. Cas. 1918B, 119; Shelton v. State (Ala. Sup.) 117 So. 8; [1] 40 Cyc. 1031-h. We find no reversible error in the introduction of such evidence by J. C. Kelly. He stated the facts and acquaintance with the members of testator's family on the mother's side.

[17, 18] The rule of hypothetical question propounded to an expert witness is well established. Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46. Such question need not hypothesize every fact in evidence, but must sufficiently cover the evidence to justify expert opinion—fairly apprise and justify the expert on the material issue of fact before the court and of which he is called upon to give an opinion (Miller v. Whittington, 202 Ala. 406, 80 So. 499); that is to say, if the discrepancy between the assumed facts and those which the evidence tends to establish is slight, the error has not been regarded as prejudicial (5 Encyc. of Ev. p. 624). There was no error in permitting Dr. H. S. Ward, who qualified as an expert, to express an opinion as to the mental condition of testator at the time indicated—that he "was of unsound mind."

[19] Under the issue presented by the pleading and the other evidence, Exhibits C, D, E, F, G, and H were competent, the same being identified as being in testator's handwriting and found in his room.

[20] Dr. Ward, a medical authority, made relevant Brower and Bannister's work containing the chapter offered in evidence on degenerative insanity. In this there was no error.

[21, 22] The court properly permitted evidence that Miss Temple Batson, a niece of testator, had made her home with him and he had supported and treated her as a member of his family; that during his last few years, without cause, he changed his attitude from devotion to that of indifference; had expressed an intention to send her to college, but later, without any cause, declined to do this, and sent her back to live with her people, and

became prejudiced against her on account of little matters which would not prejudice a normal person. This testimony further showed that, after testator declined to send his niece to college, D. C. Batson, one of the contestants, did send her, and thereupon testator became indifferent to him. This latter testimony as to the change in the feelings of testator toward his son was given by D. C. Batson. Counsel for appellants cite no authorities, and say:

"This testimony was evidently introduced to show why testator did not leave a full portion of the estate to D. C. Batson."

This evidence was competent for such purpose. The case of Councill v. Mayhew, 172 Ala. 296, 55 So. 315, declares that:

"Unequal treatment of beneficiaries having ostensibly equal claims upon a testator's bounty may be deemed unnatural, and in such a case an unnatural disposition is a fact to be ascertained and considered by the jury upon the issues of undue influence and testamentary capacity."

It was thus permissible to prove the relation between D. C. Batson and testator, in order to show there was no real reason to disinherit his son, a natural object of his bounty. If the only reasons he had were so slight as not to justify a normal man in denying the son a share in his estate, such an unnatural disposition would be some evidence, with other circumstances, of insanity. The weight to be given this evidence is for the jury when considered with all the other evidence on the question of testator's sanity vel non. In 28 R. C. L. p. 108, it is stated as the text that "dislike may be proven as tending, with other facts, to show senile dementia;" and in 14 Encyc. of Ev. pp. 294, 295, changed condition is thus stated:

"Marked changes in social and business habits, mind, and love and devotion for children or other near relatives are strong evidence of incompetency in the absence of proof of cause therefor. But if cause exists for the change such evidence is not important. It must be weighed in connection with proof of the age of the testator, and of his physical condition. A general statement by a witness as to testator's action or manner is competent. * * * The testator's manner, talk and actions at the time in issue must be compared with his conduct at a time when he was concededly sane."

This was the rule applied in Johnson v. Armstrong, 97 Ala. 731, 12 So. 72.

[23, 24] Charge 1 was properly refused as confusing to the right of the jury to consider the issue of insane delusion. However, the burden of proof is covered in given charge 16 and in the oral charge. Refused charges 3 and 13 were fully and fairly covered by the oral charge as to instructions sought. Charge 12 was covered by oral charge and given charge 2. Refused charge 15, if sufficient under Daggett v. Boomer, 210 Ala. 673, 677,

---

[1] Post, p. 465.

99 So. 181, that instruction was fully and freely given in the general charge.

We find no error in any ruling of the trial court, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

