# Alexander's Estate.

*Wills—Probate—Insanity—Partial insanity—Delusions—Unreasonable testamentary dispositions—Insufficient evidence of insanity—Valid will.*

1. A delusion which will render invalid a will executed as the direct result of it is an insane belief or a mere figment of the imagination—a belief in the existence of something which does not exist and which no rational person in the absence of evidence would believe to exist.

2. A party who relies upon the existence of a delusion to render invalid a will, must sustain the burden of showing that such delusion controlled the volition of the testator and destroyed his freedom of action in disposing of his estate.

3. A testator of large wealth who practically disinherits his only daughter alleging unnatural conduct towards himself and her mother as his reason for such action will not be deemed to have acted under the influence of an insane delusion, where it appears that he was in the possession of evidence which may have led him to believe that her conduct had been unnatural. It was for such testator, not the court, to pass judgment upon that evidence, and however harsh, unnatural and cruel his judgment may have been, it was not, in legal contemplation, a delusion, a mere figment of the imagination, all controlling with him in the making of his will.

4. A petition for an issue devisavit vel non is properly refused where the only ground for such issue is an alleged insane delusion on the part of the testator, the petitioner's father, and it appeared that the testator, a man of large wealth, had practically disinherited the petitioner, alleging unnatural conduct toward himself and her mother as his reason for such action; that the relations between herself and her parents had apparently been affectionate but on several occasions the daughter had reproached her father for indecent conduct, had spoken of his failings to third persons, had charged her mother with' over-indulgence in drink, and that these statements had been repeated to the testator.

Argued March 3, 1914. Appeal No. 38, Jan. T., 1914, by Nettie I. Moyer, from decree of O. C. Berks Co., June T., 1913, No. 51, dismissing appeal from decree of Register of Wills, refusing an issue devisavit vel non in Es-

tate of Edgar W. Alexander, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Appeal from decree of register of wills refusing an issue devisavit vel non. Before BUSHONG, P. J.

The opinion of the Supreme Court states the facts.

The court affirmed the decree of the register of wills refusing an issue devisavit vel non. Nettie I. Moyer appealed.

*Error assigned,* among others, was the decree of the court.

*Cyrus G. Derr* and *E. H. Deysher,* for appellant.— The decedent's idea that his daughter had been unnatural in her conduct toward her mother was a delusion. A delusion may consist of an insane exaggeration of an actual fact as well as a belief in a fact totally nonexistent: Philadelphia Trust Co. v. Drinkhouse, 17 Philadelphia 23; Dew v. Clark, 3 Addams 79.

The decedent's harsh judgment of his daughter's conduct towards himself is evidence that he was acting under a delusion: Boughton v. Knight, 3 Law Reports, Courts of Probate & Divorce, 64; Bitner v. Bitner, 65 Pa. 347.

Whether the original delusion or events subsequent thereto caused decedent to disinherit his daughter was for the jury: Banks v. Goodfellow, 5 Law Reports, Queens Bench, 549; Safe Deposit & Trust Co. of Pittsburgh v. Lange, 207 Pa. 527.

*Isaac Hiester,* with him *E. Carroll Schaeffer* and *C. H. Ruhl,* for appellees.—The existence of prejudice and ill feeling against a relative, though unjust and unfounded, does not amount to a delusion affecting testamentary capacity: Fisher v. Fisher, 2 Berks L. J. 238; Bennett's Est., 201 Pa. 485; Alexander's Est., 206

Pa. 47, 48; Philadelphia Trust Co. v. Drinkhouse, 17 Philadelphia 23; Morgan's Est., 219 Pa. 355; Oberdorf's Est., 2 Lack. Leg. N. 43; Bohler v. Hicks, 120 Ga. 800; 48 S. E. Repr. 306; Kendrick's Est., 130 Cal. 360; 62 Pac. Repr., 605; Kimberly's Est., 68 Conn. 428; 36 (Atl. Repr.) 847; Maynard v. Tyler, 168 Mass. 107; 46 N. E. Repr. 413; Bean v. Bean, 144 Mich. 599; 108 N. W. Repr. 369; Drum v. Capps, 240 Ill. 524; 88 N. E. Repr. 1020; Snell v. Weldon, 243 Ill. 496; 90 N. E. 1061; Deas v. Wandell, 1 Hun. (N. Y.) 120; 3 Thomps. & C. 128; McBride v. Sullivan, 155 Ala. 166; 45 So. 902; Re Calef, 139 Cal. 673; 73 Pac. Repr. 539; Kimberly's App., 68 Conn. 428; 37 L. R. A. 261, 57 Am. St. Rep. 101; 36 Atl. Repr. 847; Schneider v. Manning, 121 Ill. 376; 12 N. E. 267; Claussenius v. Claussenius, 179 Ill. 545; 53 N. E. 1006; Stackhouse v. Horton, 15 N. J. Eq. 202, 228, citing Heath v. Watts, Prerog. Ct. 1798, Deleg. 1800; Re Landis, 24 N. J. Law 488, cited in 5 Mackay & N. N. J. Dig. 999; Robinson v. Adams, 62 Me. 369; 16 Am. Rep. 473; Sibley v. Morse, 146 Mich. 463; 109 N. W. Repr. 858; Leffingwell v. Bettinghouse, 151 Mich. 513; 115 N. W. Repr. 731; Mullins v. Cottrell, 41 Miss. 291; Wintermute v. Wilson, 28 N. J. Eq. 437; Re White, 121 N. Y. 406; 24 N. E. Repr. 935; Buchanan v. Belsey, 72 N. Y. Supp. 601; Foster v. Dickerson, 64 Vt. 233; 24 Atl. Repr. 253; Re Smith, 53 Hun. 630; 24 N. Y. Supp. 928; Skinner's Will, 40 Or. 571; 62 Pac. Repr. 523; 67 Pac. 951; Foster's Est., 142 Pa. 62; Middleditch v. Williams, 45 N. J. Eq. 726; 17 Atl. 826; White's Will, 52 Hun. 613; 5 N. Y. Supp. 295; Lang's Will, 9 Misc. Repr. 521; 30 N. Y. Supp. 388; Lanham v. Lanham, 146 S. W. Repr. 635; Current v. Current, 148 S. W. Repr. 860; Snell v. Weldon, 239 Ill. 279; 87 N. E. Repr. 1022; Graham v. Deuterman, 217 Ill. 235; 75 N. E. Repr. 480; Wallace v. Whitman, 201 Ill. 59; 66 N. E. 311.

If a verdict against the will would not be allowed to

stand, an issue should not be granted: DeHaven's App., 75 Pa. 337.

OPINION BY MR. JUSTICE BROWN, July 1, 1914:

Edgar W. Alexander died November 12, 1912, leaving personal property appraised at $332,956.87 and real estate worth about $10,000. He left to survive him but one child, a daughter, Nettie, born to him by his first wife, who died May 11, 1897. The daughter subsequently married J. Harry Moyer and became the mother of two children, Josephine and Dorothy. By a will, dated September 4, 1912, and a codicil executed a month later, appellant's father gave the bulk of his estate to his second wife, collateral relatives, step-children and charities. To each of his two grandchildren, Josephine and Dorothy Moyer, he gave $5,000. He practically disinherited his daughter and only child by the following clause in his will: "I give and bequeath to Mrs. Nettie I. Moyer, wife of J. Harry Moyer, the sum of One Thousand ($1,000) Dollars, on condition that should she take any exceptions to the provisions of this my will she shall not participate in my estate to the extent of One Dollar. I make this a condition in view of the unnatural conduct of said Mrs. Nettie I. Moyer towards her deceased mother as well as myself in her relation as a child and daughter." The daughter appealed from the decree of the register admitting the will of her father to probate, and in a petition to the Orphans' Court, in which she averred that the will, so far as it affected her, was the result of a delusion on the part of the testator, prayed for an issue to determine, (1) Whether he was the victim of a delusion with respect to her conduct towards himself and her mother, so affecting him as to have rendered him insensible to his parental obligations and to have caused him to execute the paper admitted to probate as his will; and (2) whether at the time he executed the same he was of sound and disposing mind. This appeal is from the refusal to award the issue prayed for.

The habits of the decedent, upon which we need not dwell, were not good, but nothing was shown to indicate that he was not of sound mind and good business judgment, and the prayer for an issue to determine whether he had testamentary capacity was groundless. This does not seem to be questioned, for we are asked to reverse the decree of the court below solely on the ground that the decedent was the victim of a delusion with respect to his daughter which controlled him in making his will.

A delusion which will render invalid a will executed as the direct result of it is an insane belief or a mere figment of the imagination—a belief in the existence of something which does not exist and which no rational person, in the absence of evidence, would believe to exist: Taylor, Executor, v. Trich, et al., 165 Pa. 586; McGovran's Est., 185 Pa. 203; Bennett's Est., 201 Pa. 485. The burden was upon the appellant to show that such a delusion controlled the will of her father and destroyed his freedom of action in disposing of his estate. In her effort to do so she submitted much testimony, the recital of which in detail will serve no useful purpose. It was shown by a number of witnesses that she had nursed her mother during a long period of sickness with the tender solicitude of an affectionate child; that her father and mother had both praised her for what she had done for them, and that after the death of her mother the father had exhibited great affection for her and her two children. In view of all the testimony as to this, it is difficult to understand why he left but $1,000 of his large estate to her, and it would almost seem that he must have been under an insane delusion in giving his reason for doing so; but there was evidence from which he may have believed that his daughter's conduct towards himself and her mother had been unnatural. It was, therefore for him alone, being of sound mind, to pass judgment on that evidence, and, however harsh, unnatural and cruel his judgment may have been, it was not, in legal contemplation, a delusion—a mere figment of his

imagination, all-controlling with him in the execution of his will. For ten years prior to his death he and his daughter had been estranged. This appears from her own testimony. She admits that she talked about him to members of his family, and it may be, as she says, not maliciously or unkindly, but for the purpose of helping him to do better. He, however, manifestly thought otherwise. On two occasions prior to her leaving his home in 1902, where she and her family were living with him, she had reproached him for his indecent conduct towards an orphan girl who was living with them as a domestic. While he did not resent this at the time, he may subsequently have done so and regarded her reproof as "unnatural conduct" on her part. In a letter written to him in 1910, when she was about to undergo a serious operation, she pathetically refers to his long time estrangement from her and asks his forgiveness for what he may have thought it was not her privilege as a daughter to ask and demand from him as a father. This appeal was unavailing and he died unreconciled to his daughter, whose conduct he believed to have been unnatural towards him, in view of what she had said or done and of what she was reported to him as having said about him.

From the testimony submitted by the proponents it appeared that, for years before the testator's death, the appellant had repeatedly spoken of his failings; that she had been reproached for doing so by those to whom she had complained of him, and that what she said about him had been repeated to him, leading him at times to say that what she had said of him had nearly made him crazy and almost ashamed to stay in Reading. It further appeared that she had charged her mother with over indulgence in drink, and this, too, was repeated to her father, who expressed his grief that she should have so accused her mother. In September, 1903, in response to a request from her, he sent her the earrings of her mother, and in an accompanying letter wrote that he pre-

ferred sending them by a messenger to having her come to his house for them, and that he could no longer submit to her villification of him, threatening her that, if she did not desist from it, he would prosecute her. All this may have been unjust on his part, but there is nothing to show that it was a mere delusion which drove him into an unnatural attitude towards his daughter. He has stated why he discarded her. It may be—and we are inclined to so believe—that he was unreasonable in characterizing her conduct towards him and her mother as unnatural, and that his treatment of her as the natural object of his bounty was most harsh, but he acted upon what was his belief, and, if it was error, we are powerless to correct it. His opinion of his daughter's conduct, upon which he acted in making his will, may have been wholly unreasonable, but this can have no weight in the present inquiry, unless it be shown that the opinion rested on an imagined state of facts: McGovran's Estate, supra.

The burden was upon the appellant to show, by proof sufficient to sustain a verdict in her favor, that what she most naturally regards as the injustice of her father to her resulted from the delusion which she avers in her petition for the issue. After a review of all the testimony, we are constrained to say that she has failed to do so, and that we must concur in the following conclusion of the court below: "It may safely be asserted as a clear fact from the testimony that there were many stories afloat about Mr. Alexander which he believed to have been started by Mrs. Moyer. She, herself, tells her father not to believe what he hears without giving her a chance to defend herself, and he speaks of stories in his own letter about the earrings. Whether Mr. Alexander is to be condemned for listening to rumors and idle gossip or, perhaps, to false stories told by persons to discredit his own child, is not a question that this court is called upon to decide. The only inquiry is whether there is evidence from which a jury might reasonably infer

that Mr. Alexander was laboring under a mental disorder; and the result of that inquiry is that there is nothing to show that he did more than take the stories as they came to him, including the story about his dead wife, believe them and pass a very severe judgment upon the daughter."

Decree affirmed at appellant's costs.