## Cohen Will.

Argued January 7, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

162

[black redacted area]

*Raymond M. Remick,* with him *Charles B. Ermentrout,* for appellants.

*Webster S. Achey,* for appellee.

Opinion by Mr. Justice Allen M. Stearne, March 24, 1947:

The question raised by this appeal is whether decedent's signing of his will by mark was proved in compliance with section 3 of the Wills Act of June 7, 1917, P. L. 403, 20 PS 192.

Harry Cohen, the decedent, died April 21, 1943. He left surviving as his only heirs six children and ten grandchildren (children of deceased children). His will, dated November 30, 1942, signed by his mark, was probated and letters testamentary granted to the executors therein named. By its provisions $500 was bequeathed to each of his six living children and $100 to each of five grandchildren, children of a predeceased daughter, and $100 each to five grandchildren, children of another predeceased daughter. The residue of the estate was bequeathed to three of the six living children: Gissa, Wolf and Louis. His sons Wolf and Louis were named as executors.

On November 23, 1943, the orphans' court directed Benjamin, Rebecca and Minnie (three of the children) to perfect their appeal from the probate of the will within six months from November 22, 1943. On May 15, 1944, pursuant to a petition of the above named three children, a citation was awarded directed to Wolf and Louis (two of the beneficiaries under the will) to show cause why the appeal from the register should not be sustained and for an issue d.v.n. to the court of common

pleas to try by jury four questions of fact: (1) testamentary capacity, (2) undue influence, (3) whether or not the said writing is the last will and testament of decedent, and (4) "whether or not [decedent] acknowledged the alleged will to be his will in the presence of two witnesses." An answer was filed by the respondents and hearing had before the two judges of the court below. At the hearing contestants abandoned their contentions concerning testamentary capacity and undue influence, leaving for judicial determination the sole question whether the will had been executed by decedent, with his mark, and proved as required by the provisions of the Wills Act of 1917, supra. President Judge HIRAM H. KELLER, in an opinion, dismissed the appeal from the probate and refused an issue *devisavit vel non.* The appeal followed.

Section 2 of the Wills Act, supra, provides that "Every will shall be in writing, and, (excluding nuncupative ones) shall be signed by [testator] at the end thereof, *or by some person in his presence and by his express direction;* and, in all cases, shall be proved by the oaths or affirmations of two or more competent witnesses . . ." (emphasis supplied). It will be observed that this section provides for the situation when the testator has no part in the mechanical signature, but requests another to sign his name for him. In such a case such a person can only act *"by his express direction"* and this must be proved by two or more competent witnesses.

Section 3 of the Wills Act, supra, makes provision for decedent's signing by "mark or cross." The words of the act are as follows: "If the testator be unable to sign his name, for any reason other than the extremity of his last sickness (i. e., nuncupation), a will to which his name is subscribed *in his presence, by his direction and authority, and to which he makes his mark or cross,* unless unable so to do,—in which case the mark or cross

shall not be required,—shall be as valid as though he had signed his name thereto: *Provided,* That such will shall be proved by the oaths or affirmations of two or more competent witnesses" (emphasis supplied).

The commissioners wrote that this section ". . . is intended to cover cases where a person is unable to sign his name, whether from lack of education or from physical weakness": Report of Commissioners, p. 59.

As the will in the present case was signed by deceased with his mark or cross, we need not consider the other provision of the section which exempts the requirement of making of the mark or cross where testator is "unable so to do,—in which case the mark or cross shall not be required. . . ." The commissioners said, supra, "The provisions that the mark may be dispensed with if the testator be unable to make a mark is intended to cover such a case as that of a man who has lost both arms or is paralysed." If, for whatever reason, a testator does not participate in the making of his signature (by mark or cross) and requests that it be done by another, whether proof of such fact should be under section 2 or section 3 of the act may be debatable, but, as above indicated, the question is not now before us.

The third section of the Wills Act has been construed by us. The law is concisely stated by Mr. Justice HORACE STERN in *James' Estate,* 329 Pa. 273, 275, 198 A. 4: "There must be strict compliance with these statutory provisions, and a will is not valid unless executed precisely in accordance therewith. If executed by mark, it is not a lawful instrument unless testator's name was subscribed in his presence and by his direction and authority: Hunter's Estate, 328 Pa. 484. It is true that such direction and authority need not be express; it may be implied, as, for example, where testator sees his name written and then signifies his ratification of the act by affixing his mark: Novicki v. O'Mara, 280 Pa. 411; Girard Trust Co. v. Page, 282 Pa. 174; Hughes's Estate,

286 Pa. 466; Carmello's Estate, 289 Pa. 554; Francis's Estate, 299 Pa. 398. But, whether express or implied, the facts that such direction was given and that testator's name was subscribed in his presence must be proved, under the act, by two or more competent witnesses, each of whose testimony must be complete, independently of the other's, as to the existence of those circumstances and performance of those acts which the statute requires to exist and to be done as conditions essential to the validity of the will." See also: *Cassell's Estate*, 334 Pa. 381, 6 A. 2d 60; *Orlady's Estate*, 336 Pa. 369, 9 A. 2d 539.

We have examined the testimony to ascertain if the testator was unable to sign his name, whether it was signed in his presence, and by his direction and authority, either express or implied, and whether it was proved by independent and self sustaining testimony of two or more competent witnesses.

The present will was the successor of a prior will, *also signed by mark,* dated September 12, 1938. Under the 1938 will testator gave $500 each to his seven named children and $100 each to the five children of his deceased daughter Rose. He also gave $300 to his daughter Minnie "for her loving care. . . ." On November 30, 1942, Wolf Cohen, son of decedent, called Irvin L. MacNair, a justice of the peace, on the telephone, and requested and secured an appointment for his father, the decedent. On that day between 9 and 10 a. m. the decedent and the son called upon Mr. MacNair. The justice of the peace had known the decedent and his son for 35 or 40 years. Decedent was over 80 years old; he could not carry on a conversation in English; could speak Yiddish, but could neither read nor write, not even his name; the son Wolf acted as interpreter; decedent took the 1938 will out of his pocket and endeavored to explain to MacNair that he wanted to change his will; the son, interpreting the Yiddish of the father,

explained in English what decedent desired to accomplish. The daughter Sarah had since died; she had been bequeathed $500 and decedent desired to substitute a bequest of $100 to each of her five children; also he had paid his daughter Minnie $300 for his care and therefore desired this bequest to be eliminated; otherwise the will was to be as originally executed; Mr. MacNair, in his kitchen, in the presence of Mrs. MacNair, the decedent and the son Wolf, and with the will of 1938 before him, rewrote the present will on his typewriter. It was testified that with the aid of the interpretation of the son Wolf, the will was read and fully explained to decedent and decedent signified his approval thereof. In the presence of all of the four persons, Mr. MacNair wrote the name of Harry Cohen, the decedent; the decedent, without aid, affixed his mark or cross to the will. Mr. and Mrs. MacNair then signed their names as subscribing witnesses and certified, in the attestation clause of the will, that they had "subscribed our names at [testator's] request as witnesses thereto, in the presence of the said testator, and the presence of each other." Following the death of deceased, upon the probate of the will, both *subscribing* witnesses affirmed that they were "present, saw and heard Harry Cohen, the testator, sign, seal, publish, pronounce and declare the foregoing instrument of writing as and for his Last Will and Testament *by his mark . . .*" (emphasis supplied). Such proof, *standing alone,* would have been insufficient under section 3 of the Wills Act, supra, *because there was nothing in the register's record to establish that decedent's name had been written by his express or implied direction and authority.* However, this deficiency was supplied when, at the hearing, on appeal, the surviving *subscribing witness,* Irvin L. MacNair, and an *attesting* witness, Wolf Cohen, testified as to this fact. It was proven that the name of Harry Cohen, the testator, was written in the will by Irvin L. MacNair, in decedent's presence, at

his implied request, in the presence of two *subscribing* witnesses and of the *attesting* witness, and to which the testator affixed his mark or cross. Such an execution of a will is in compliance with section 3 of the Wills Act of 1917, supra.

We note that all parties, whether as beneficiaries under the will or heirs and next of kin, have not been joined. The proper practice is to join all such parties: *Miller's Estate*, 159 Pa. 562, 28 A. 441; 166 Pa. 97, 31 A. 58. See also *Knecht's Estate*, 341 Pa. 292, 297, 19 A. 2d 111. This error in practice, however, is not necessarily reversible error: *Thomas Will*, 349 Pa. 212, 36 A. 2d 819. In the facts of this case there appears no necessity to recommit in order to join all omitted parties.

The decree of the court below is affirmed, at the cost of the appellants.