## Weiss Will.

Argued November 21, 1950. Before DREW, C. J., STEARNE, JONES and CHIDSEY, JJ.

*George J. Ivins,* for appellant.

*Edward E. Dicker,* for appellee.

OPINION BY MR. JUSTICE JONES, January 2, 1951:

The appellant is a son of the decedent and a legatee under her alleged last will, here involved, which was probated before the Register of Wills of Philadelphia County who granted letters testamentary thereon to the proponent-executor. On petition of the decedent's daughter, alleging a want of testamentary capacity

and undue influence in respect of her mother's execution of the testamentary writing, the Orphans' Court, after a hearing, allowed an appeal from the probate but limited the issue *devisavit vel non* to whether the decedent lacked testamentary capacity at the time of the execution of the alleged will. The issue was tried before a judge of the Orphans' Court, sitting as chancellor, and a jury which returned a verdict against the will. The proponent moved for judgment n.o.v. and for a new trial. The court en banc overruled these motions and, by final decree, from which this appeal was taken, entered judgment on the verdict and set aside and revoked the letters testamentary.

The appellant assigns as error the overruling of the proponent's motions and, in support thereof, contends that there was not sufficient evidence adduced at trial to support the jury's verdict and that the chancellor erred in certain rulings made at trial. In both respects, the contention is without merit.

The trial errors charged are (1) the chancellor's allowance, over objection, two questions by contestant's counsel in cross-examination of the proponent of the will who happens to be also the scrivener and a subscribing witness, (2) the trial judge's calling to the attention of contestant's counsel that he had not offered rebuttal testimony in refutation of statements, hostile to the decedent, attributed by the scrivener's testimony to the contestant and her husband, and (3) the court's refusal to withdraw a juror, on motion of proponent's counsel, because the court, in a colloquy with counsel during the latter's extended objection to plainly relevant and material testimony, had observed, by way of countervailing argument, that "ordinarily a parent divides his property among all his children." The criticized questions in cross-examination were entirely proper. Both of them related to the execution of the will and were relevant to the issue. Certainly, the trial

judge cannot be thought to have abused his discretion in not sustaining objections to them. As to the court's calling the attention of contestant's counsel, before the case was closed, to the fact that he had possibly neglected to introduce certain rebuttal testimony, the complaint voiced by counsel for the appellant is to be deprecated. The failure of contestant's counsel in such regard was patently an oversight; and the omission of the testimony would have made the trial less than a thorough and complete inquiry. The action of the learned trial judge was not only not censurable but commendable. It was recently reiterated in *Gerlach Estate,* 364 Pa. 207, 215, 72 A. 2d 271, that "The orphans' court 'in its discretion may correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes or blunders. . . .': *Sloan's Estate,* 254 Pa. 346, 350, 98 A. 966. 967, 968; [and citing other cases]." The expression of the court as to how a parent ordinarily divides his estate was made in answer to counsel's insistent and fallacious argument. If the remark was given any notice, it was only because of the accentuation it received from counsel's citation of it in his illy advised motion for the withdrawal of a juror.

The testimony abundantly supports the jury's verdict. The decedent left to survive her three adult children—two sons and a daughter. By the will in question, which was drafted and executed while the decedent was in a hospital during her last illness, she disinherited the daughter because of an antipathy toward her and her husband for reasons expressed to the scrivener. The complaints then voiced by the decedent could only have been figments of her imagination during her suffering from an operated malignancy for which she had received sedation regularly for months past. There is no need to recite the testimony in detail. It is sufficient to say that it shows that the daughter

was dutiful to her mother and attentive in her ministrations to her while she was in the daughter's home for the six months following her serious operation until her return to the hospital in the last month of her life; it also shows that the daughter's husband was considerate of and respectful to the decedent; and that the things which the mother related to the scrivener concerning her daughter and husband had no basis in fact whatsoever. This is not a case of general incapacity to make a will but of a particular delusion which improperly influenced the decedent's testamentary disposition to the disadvantage of one who should have been a natural object of her bounty. In *Leedom Estate,* 347 Pa. 180, 181-182, 32 A. 2d 3, Mr. Justice (now Chief Justice) DREW stated and quoted with approval that "It is well settled that 'A delusion which will render invalid a will executed as the direct result of it is an insane belief or a mere figment of the imagination—a belief in the existence of something which does not exist and which no rational person, in the absence of evidence, would believe to exist:' *Alexander's Estate,* 246 Pa. 58, 62. See also *McGovran's Estate,* 185 Pa. 203. The following statement pertaining to the law concerning such delusions was approved by this Court, in *Thomas v. Carter,* 170 Pa. 272, 282: 'A man may be of sound mind in regard to his dealings in general, but he may be under an insane delusion, and whenever it appears that the will was the direct offspring of the partial insanity or monomania under which the testator was laboring at the very time the will was made, that it was the moving cause of the disposition, and if it had not existed the will would have been different, it ought to be considered no will, although the general capacity of the testator may be unimpeached'."

The chancellor took occasion to express his approval of the verdict upon the jury's rendition of it. As the evidence fully warranted the verdict and it satisfied

the conscience of the chancellor, we can see no error in the entry of judgment on the verdict and the revocation of the letters testamentary as decreed by the learned court below. "Once the chancellor approves and accepts the verdict, it becomes binding in the will contest in the Orphans' Court as determinative of the fact so established: Cross's Estate, 278 Pa. 170, 184, 122 A. 267": *Stewart Will*, 354 Pa. 288, 295, 47 A. 2d 204.

Decree affirmed at the appellant's costs.