## Maganuco Estate

248

Before Sinkler, P. J., Klein, Bolger, Hunter and Lefever, JJ.

*Charles P. Mirarchi* and *Charles P. Mirarchi, Jr.,* for plaintiffs.

*James J. Bucci,* for defendants.

BOLGER, J., March 9, 1951.—The jury decided that Biagio Piazza, Joseph Giacobbo and John Giacobbo, or at least two of them, subscribed their names to the will of Luigi Maganuco as witnesses in the presence of decedent. Contestants, decedent's next of kin, filed a motion for new trial averring that the verdict was against the evidence, the weight of the evidence and the law; that the attorney for "protestants" argued before the jury improperly and "prejudicely" and that two of proponents' witnesses "have offered perjured testimony which was the jist of the issue".

An issue d. v. n. had been awarded on the point stated, but was refused on the allegation of lack of testamentary capacity. The requirements of two subscribing witnesses signing in the presence of testator was due to the presence in testator's estate of New Jersey

real estate, which comprised the bulk of the assets. As the trial judge told the jury, the will was valid respecting personalty under Pennsylvania law, the requirements of which are less rigid as to formal execution of wills. The New Jersey statute involved is chapter 139, sec. 3:2-3 of the Act of July 1, 1939, amending section 3:2-3 of the revised statute, as follows:

"Except as to nuncupative wills, a will to be valid shall be in writing and signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in the presence of two witnesses present at the same time, who shall subscribe their names thereto, as witnesses, in the presence of the testator, and shall be probated in the office of the surrogate or in the orphans' court of the county in which the testator resided at the time of his death, or in the prerogative court of the State of New Jersey." (3 N. J. S. §2-3)

In In re Halton, 111 N. J. Eq. 143, where a subscribing witness testified that the paper writing was neither signed in his presence nor the signature thereto acknowledged by testator, the court said, p. 151:

"The requisite formalities prescribed by our Wills Act are . . . as follows: 'First, that the will shall be in writing; second, that it be signed by the testator; third, that the signature of the testator shall either be made or acknowledged by him in the presence of two witnesses who shall be present at the same time; fourth, that the writing shall be declared by the testator to be his last will, in the presence of those witnesses, present at the same time as aforesaid; and fifth, that the two witnesses shall subscribe their names thereto in the presence of the testator'."

At the trial proponents first introduced the register's probate record including the disputed will and the affidavits of the subscribing witnesses. The attestation

clause to which these witnesses subscribed their names states that the instrument was "signed, sealed, published and declared by Luigi Maganuco, the above named testator, as and for his last will and testament in the presence of us, who at his request, in his presence and in the presence of each other, all being present at the same time, have hereunto subscribed our names as witness". The contents of the probate affidavits forming part of the register's record contain almost identical language. Following the introduction of this record proponents rested. The three subscribing witnesses were then called as court's witnesses. Two of them, Biagio Piazza and Joseph Giacobbo, in turn repudiated the statements that they subscribed their names in the presence of testator, although they acknowledged that the will was read to him and that he signed it in their presence. John Giacobbo, the other subscribing witness, was not present in court, but his testimony taken at the d. v. n. proceeding was read to the jury. It corroborated the other two subscribing witnesses. These three witnesses were corroborated also by George Giacobbo, who testified that he procured the making of the will and the obtaining of the witnesses, both at the instance of testator.

When faced with their affidavits taken before the register, the three subscribing witnesses admitted their signatures and their oaths thereto, but they stated that they did not understand that they were swearing to the fact of their signing in the presence of testator. They also acknowledged their signatures to the attestation clause in the will.

The other relevant testimony came from the lips of two proponent beneficiaries, who were husband and wife, but strangers in blood to testator. They testified that they were present at the execution of the will and that all of the signing, both by testator and the subscribing witnesses, was done at the same time. There

was no substantial denial by contestants that these two witnesses were present in the room at the time of the execution of the will. In a clear, complete and accurate charge, to which no exception was taken, the trial judge submitted to the jury the question involved, pointing out that the credibility of the testimony of all of these witnesses was for the jury and that it was for them to weigh it accordingly. He stated, inter alia, that the three subscribing witnesses as well as George Giacobbo, the one who procured them as witnesses, were actually disinterested persons standing neither to lose nor to gain by the result. He severely criticized these subscribing witnesses for their contradictions and stated:

"We must look at their testimony with caution, yet in our search for truth, we cannot exclude them from the witness stand, nor forbid them the privilege of correcting their former statements. These witnesses are not on trial as defendants in this case. This case involves the property rights of others and it is the property rights of the parties which will be affected by your answer."

He told the jury also that they should regard with caution the testimony of proponent beneficiary witnesses because of their interest in the case. The jury found in favor of the will.

The motion for a new trial is primarily predicated upon the insufficiency of the evidence to sustain the verdict. The only subject for discussion now is the weight which the jury was authorized to give to the testimony of the three subscribing witnesses as well as to that of the two proponent witnesses.

Introduction by proponents of the probate record fulfilled their initial burden of proof, although such record had no evidential value, the proceeding being de novo: Szmahl's Estate, 335 Pa. 89. The three subscribing witnesses were court's witnesses who were examined and cross-examined by the parties without the obligation

of either side being bound by their testimony: Plotts' Estate, 335 Pa. 81. Admittedly, the cross-examination of these witnesses eliciting their contradictory statements contained in the attestation clause of the will and in their probate affidavits was admissible. It was the province of the jury to reconcile the conflicting statements or to draw the line between them and say which should prevail: Ingram v. Pittsburgh, 350 Pa. 344, 349. This rule of law is applicable generally in civil cases.

However, in cases involving the witnessing and probate of wills, a different rule of law pertaining to the weight to be given to the testimony of subscribing witnesses to wills and to probate affidavits as against the repudiation of such statements at subsequent trials necessarily obtains. The making of a will is one of the most solemn and important acts a man performs in his lifetime. For this reason, the law surrounds it with so many safeguards of a purely formal or technical character. Hence, when a testator has selected persons to be his witnesses and they act in that capacity, they perform a most important function. Their acts and those of testator are deliberate and voluntary. They participate in the preservation in permanent form in the making of a record of facts attending the execution of the will so that following the death of testator and in case of the failure of the memory of the attesting witnesses or their death or other casualty, the will may still be proved. In In re Rein, 139 N. J. Eq. 122-126, a subscribing witness, inter alia, admitted the genuineness of her signature on the attestation clause of the will, but insisted that she had not placed it there and could not recall the details relating to the execution of the will. The court said:

"The contradiction or impeachment of an attestation clause by one of the witnesses thereto is a grave matter and ought not be accepted except upon the clearest and

most persuasive testimony. All doubts should be resolved in favor of the facts recited in the attestation clause, and this principally for the reason that the testator, the most important witness, is beyond recall. . . . It would be a most deplorable condition if wills could be overthrown either by the forgetfulness or the perfidiousness of witnesses in whom the testator reposed confidence and who reduced to a permanent memorial in the shape of an attestation clause the facts attending the execution of the will."

The present case has the added important factor of the witnesses' affidavits in a judicial proceeding before the register: Plotts' Estate (supra).

In Rice's Estate, 173 Pa. 298, where one of two subscribing witnesses to a will executed by mark repudiated at trial his probate affidavit, testifying that he was not present when testator's mark was made on the will, the Supreme Court approved the language of Judge Ashman of this court when he stated, page 299:

"Even if the case had stopped at this point, we are by no means satisfied that we could sustain the appeal, and reverse a decree of the register, which, with the evidence before him, he was bound to enter. No will can be said to be safe, if a subscribing witness may nullify it by declaring that he perjured himself before the register. The policy of the law (it was remarked in Ela v. Edwards, 16 Gray, p. 99) has been 'that no man's will should be defeated through the want of memory on the part of the attesting witnesses,' or on account of their subsequent insanity or infamy."

In our opinion the trial judge, after accepting the testimony of the three subscribing witnesses, treated the recantation of their earlier statements rather tenderly. While he could not have properly instructed the jury not to believe them (Commonwealth v. Alessio, 313 Pa. 537), nevertheless he might well have instructed it to regard this testimony with great sus-

picion, not merely with caution, and in the light of their earlier solemn written declarations, once under oath, not to believe them unless the jury was convinced that their testimony was most clear and most persuasive: Beswick's Estate, 13 Dist. R. 711.

We are mindful that the door should not be closed to sincere retractions by witnesses to a will because of the possibility of fraud, forgery, faulty recollection or other valid reason. There are many cases illustrating such situations: Irvine's Estate, 206 Pa. 1; Culbertson's Estate, 301 Pa. 438; see citations in Lare Will, 352 Pa. 323, and other cases cited in Hunter's Orphans' Court Commonplace Book, vol. I, page 422, par. 7(h). This is especially true respecting contests involving questions other than formal execution such as lack of testamentary capacity, undue influence, etc.: Plott's Estate, supra; Szmahl's Estate, supra, and many others. But ordinarily, the execution and proof of wills would be exposed to complete breakdown under any less stringent rule than here enunciated.

The contention that the two beneficiary witnesses perjured themselves is without merit. Their presence at the time of execution was undisputed and their testimony accorded with the probate affidavits as well as with the attestation to the will. The jury saw and heard them and the trial judge properly instructed the jury as to their interest. Their testimony was, therefore, clearly for the jury: Dalbey's Estate, 326 Pa. 285. No doubt their testimony was most weighty in rebuttal of that of the three subscribing witnesses' declarations that they did not sign as witnesses to the will in the presence of testator. Judge Penrose in Beswick's Estate, supra, points out very clearly that such testimony is sufficient to negative that of attesting witnesses.

Summarizing, the evidence which the jury no doubt believed and which supports the verdict is contained

in the register's record, the testimony of the three subscribing witnesses and of George Giacobbo on points other than the point in dispute, and the evidence of the two subscribing witnesses. We regard this record as sufficient to sustain the verdict: Beswick's Estate, supra; Rice's Estate, supra; Halton Estate, supra; Rein Estate, supra; Morris Will, 349 Pa. 387, and Cohen Will, 356 Pa. 161.

The trial judge, who sat as chancellor, approves and accepts the verdict. It, therefore, becomes binding as determinative of the fact so established: Stewart Will, 354 Pa. 288, and Weiss Will, 366 Pa. 456.

The motion for a new trial is refused.