## Oberrender Estate

*James H. Gorbey, Jr.*, for accountant.
*Weston C. Overholt, Jr.*, and *George Thompson*, for objectors.

DIGGINS, *J.*, July 19, 1978—

## I. BACKGROUND

Elsie Payne Oberrender died on June 15, 1977. Letters of administration pendente lite were granted to Timothy J. Gorbey, Esq., on August 3, 1977, by virtue of his appointment to that position by the Honorable Anthony R. Semeraro, Register of

Wills, Clerk of the Orphans' Court, under jurisdiction of the Act of June 30, 1972, P.L. 508, 20 P.S. §901; Whitby v. Cottrell, 62 D. & C. 2d 797 (1974).

The register's instructions to Mr. Gorbey were that he was to commence his duties immediately because of the suspected size of the estate as well as the deteriorating condition of the properties.

The register further directed the administrator to notify all parties who might have an interest under the terms of the will offered for probate as well as under the terms of the will offered as caveat. In the event of intestacy, the administrator was directed to contact the intestate heirs. This direction was consistent with the register's authority: Cohen's Estate, 356 Pa. 161, 51 A. 2d 704 (1947).

All of the circumstances of the case required that letters of administration pendente lite be granted promptly by the register to a fit party. (20 P.S. §3160.) The court has no doubt that Timothy J. Gorbey, Esq., through his experience as counsel for various public and private corporations, as Treasurer for the City of Chester, and as Tax Collector for the City of Chester and its School District, was certainly an experienced and fit party as contemplated by 20 P.S. §3160.

Furthermore, because of the complexity of the estate and the attendant legal issues, and the celerity with which all matters had to be accomplished, it was reasonable and prudent for the administrator pendente l ite to engage the services of an attorney to aid in his duties.

The administrator and his attorney immediately began carrying out their duties, including the securing of bond, collection and review of all necessary documents, inventory of all personal and real property, inspection of all real property, securing of

necessary insurance and appraisals, maintenance of property, and preparation of all real and personal property for disposition.

The administrator and his attorney maintained a constant and necessary contact with all possible parties in interest and their attorneys, and took every precaution to guarantee that all parties knew what was being done on behalf of the estate.

When the administrator determined that the interests of the estate would best be served by a sale of real estate, he properly notified all parties and petitioned the court for permission to sell. This permission was granted.

On January 27, 1978, a will contest having been resolved, the register issued letters testamentary to a permanent executor. The administrator pendente lite then prepared and filed his first accounting, including petitions for payment of administrator's fees in the amount of $13,817.50, and legal fees totalling $16,450.

Objections were then filed to this account and the request for payment of fees.

## II. OBJECTIONS AND ISSUES

The objectors raise four specific issues and objections which will be discussed separately, though the underlying issue is the same in each one.

A. Were the administration expenses of photocopying documents and the bulk mailing of those documents unnecessary, excessive and unreasonable?

The administrator lists charges to the estate of $1,414.18 for photocopying, $198.23 for postage and $51.56 for overtime paid to secretaries for stuffing and mailing the documents.

The objectors claim that the number and types of materials copied and mailed were excessive and that summaries of these papers could have been prepared and mailed at much less expense. The objectors characterize the conduct of the administrator as "overzealous."

This court feels otherwise. The papers in question were all related to the administration of the estate and the disposition of the property. The parties who received these mailings were all possible parties in interest and/or their attorneys. A will contest was raging and the administrator had an obligation to keep *all* parties informed as to the progress of the estate.

What the objectors term "overzealous" conduct this court interprets as a proper abundance of caution, in light of the possible legal and financial ramifications of *not* keeping all parties well informed.

Consequently, the court finds the expenses of copying and mailing to be justified under these circumstances.

B. Were the expenses of painting, clean-up and repair on the real estate unauthorized by the court, and improper, excessive, and unreasonable in this case?

Although an administrator pendente lite has no general power to sell real estate, the orphans' court may grant this power if it can be shown that the real estate is deteriorating and is exposed to increased risk of vandalism or some other hazard: Gabell Estate, 4 Fiduc. Rep. 184, 87 D. & C. 53 (1954).

In this case, the administrator petitioned the court for permission to sell certain real estate, and the petitions was granted. The petition stated that certain persons had been retained to prepare the

property for sale. The accounting lists payments totalling $8,082.85 for those painting, clean-up and repair services.

We now hold that when the court approved the sale of the real estate, it by implication approved the expenses necessary to prepare that property for sale. Considering the apparent condition of the property before these repairs were made, the court does not feel that these charges were excessive or unauthorized.

The objectors also contend that the administrator sold the property for a loss, and not for a price above the appraised value, as stated to the court. Their reasoning is that the appraised value was $40,000; the property was sold for $45,500, but that the $8,082.85 was expended on the property after the $40,000 appraisal was secured, thus necessitating a sale price of at least $48,082.85.

The court does not agree with this reasoning. Such a conclusion might be reached if the $8,082.85 were spent on permanent or long-term *improvements*. But the facts of this case indicate that much of this money was spent on immediate and necessary *repairs and maintenance*. These do not *add* to the value of a property; they are necessary to *maintain* value. In fact, many of these repairs were made necessary by changes in the condition of the property after the $40,000 appraisal. Had these repairs been done by the owner over a period of time, when they first became necessary, the $8,000 cost would have been spread out, but the $40,000 appraisal would have stayed the same.

The court finds that the repairs were both authorized and necessary, and the sale price of $45,500 was in excess of the market value of the property.

C.   Is the requested attorney's fee excessive and unreasonable?

It is within the sound discretion of the orphans' court to pass upon the reasonableness of the fees charged by an attorney for an estate: Huffman Estate (No. 3), 349 Pa. 59, 36 A. 2d 640 (1944). The allowance of counsel fees is primarily within the discretion of the auditing judge: Stafford Estate, 152 Pa. Superior Ct. 551, 33 A. 2d 78 (1943).

Furthermore, the allowance of counsel fees depends on many factors, including the size of the estate (in excess of $400,000 here), novelty and difficulty of questions involved, extent of counsel's labor and time required, responsibility assumed by counsel, and his professional standing: Warden Estate, 348 Pa. 224, 35 A. 2d 297 (1944).

The court has previously discussed the circumstances surrounding the appointment of the administrator pendente lite, the will contest, etc. These factors must be recognized when considering that the attorney in this case performed many tasks which, *under other circumstances and in less volatile situations* might have been entrusted to laymen at less expense.

The key here is that the administrator *had* to be extra cautious, abundantly so, to make certain that even the most routine matters involved in the estate were done correctly and with supervision. Thus, matters not normally considered legal in nature became so in this case, because of the possibility that all actions taken on behalf of the estate would be contested and scrutinized in a court of law. The administrator properly chose to avoid complications by assigning these duties to his attorney.

Under these circumstances, the court finds that the attorney's fees of $16,450 are justifed, as the administrator acted within his legal powers in instructing the attorney to perform the listed tasks.

D. Is the administrator pendente lite's fee excessive and unreasonable?

The rules applying to allowance of counsel fees and the discretion of the court, supra, also apply when considering the fee of the Administrator: Huffman Estate (No. 3), supra; Stafford Estate, supra; Warden Estate, supra.

Again, the question arises as to whether the administrator could have or should have, assigned some of his tasks to clerical or other workers, thus reducing the requested fee of $13,817.50. And again, the court reaches the same conclusion. The administrator acted with a proper abundance of caution, choosing to do many of these tasks himself, to avoid complications. He was at all times acting within the scope of this legal authority, and should not now be penalized because his caution and conscientiousness might have resulted in a greater cost than if he had been satisfied to delegate authority and risk protracted litigation.

Accordingly the court enters the following

### ORDER

And now, to wit, July 19, 1978, after hearing and consideration of briefs, the objections to the account of the administrator pendente lite are dismissed, the account is approved, and the fees of the administrator and his counsel are ordered paid as petitioned.